Gary Wayne SLUSHER, an infant who sues by his next friend and father-in-law, Lawrence A. Hamblett, Plaintiff,

v.

PARAMOUNT WARRIOR, INCORPORATED, Defendant.

Civ. A. No. 70-C-130-R.

United States District Court,
W. D. Virginia,
Roanoke Division.

Nov. 16, 1971.

Joseph P. Bounds, Copenhaver, Ellett & Lawrence, Roanoke, Va., for plaintiff.

William R. Rakes, Gentry, Locke, Rakes & Moore, Roanoke, Va., for defendant.

## RULING ON MOTION TO DISMISS

DALTON, District Judge.

The plaintiff, a citizen of the State of Virginia, has filed a complaint alleging liability against the defendant, Paramount Warrior Incorporated (hereinafter Paramount), for injuries allegedly caused by the negligent acts of the defendant's employees. Jurisdiction is based on diversity of citizenship pursuant to the provisions of 28 U.S.C.A. § 1332. The defendant has moved for dismissal of this action on the ground that the plaintiff's exclusive remedy for the injuries was recovery of compensation under the Virginia Workmen's Compensation Act.

The plaintiff, Gary Wayne Slusher, was an employee of Carolina Tire Company (hereinafter Carolina Tire), a firm operating a tire sales and service business in Roanoke, Virginia. Paramount is a corporation engaged in the construction of roads and highways. At the time of the accident, Paramount had a contract with the State of Virginia to construct a section of Interstate 81 in Montgomery County, Virginia. At that same time, Carolina Tire had a contract with Paramount to supply tires for the defendant's trucks and road building equipment and to maintain an experienced tire serviceman on the job site of Paramount in order to provide continuous service. The employee of Carolina Tire assigned to the Paramount job site was the plaintiff, Slusher.

On September 12, 1970, Mr. Slusher sustained an injury when the rigging attached to steel pipe which was being unloaded by the defendant's employees broke causing the pipe to fall on the plaintiff. At the time of the accident, the plaintiff was changing tires on a pickup truck owned by Paramount which was parked in the vicinity of the unloading operation. For this injury the plaintiff was awarded workmen's compensation by the Industrial Commission of Virginia under the coverage maintained by Carolina Tire since the accident occurred while the plaintiff was in

the course of his employment with that firm.

■ Under Section 65.1–40 of the Virginia Code (1968 Repl.Vol.), an employee is precluded from maintaining a common law action against his employer for an injury sustained in the course of employment when he and his employer have accepted the provisions of the Workmen's Compensation Act.[1] Veale v. Norfolk & Western Ry. Co., 205 Va. 822, 139 S.E.2d 797 (1965); Noblin v. Randolph Corp., 180 Va. 345, 23 S.E.2d 209 (1942). However, the employee's common law right to maintain an action against a party whose negligence caused his injuries still remains unless the provisions of the Act expressly or by necessary inference curtails or denies it. Fauver v. Bell, 192 Va. 518, 65 S.E.2d 575 (1951). This right to maintain a common law action is recognized in Section 65.1–41 of the Virginia Code (1968 Repl.Vol.) which gives an employer the right of subrogation to his employee's right to recover damages from any other party for the injury or death.[2] This right to subrogation is limited, of course, to the amount of compensation for which the employer is obligated to pay his employee in the form of workmen's compensation.

■ The term "other party" as used in this section refers to those third parties against whom an employee may rightfully bring a common law action. It has been held by the Virginia Supreme Court of Appeals that an employee has no cause of action against another party for injuries received while working for his employer unless that other party is a stranger to the business and the work being done. Floyd, Administratrix v. Mitchell, 203 Va. 269, 123 S.E.2d 369 (1962); Feitig v. Chalkley, 185 Va. 96, 38 S.E.2d 73 (1946). It has also been held that the employee of a subcontractor engaged in the same trade, business or occupation as a general contractor cannot maintain a common law action against the general contractor for an injury arising out of and in the course of his employment; that is, a general contractor is not an "other party" within the meaning of Section 65.1–41. Sykes v. Stone & Webster Engineering Corp., 186 Va. 116, 41 S.E.2d 469 (1947).

Underlying the principle that a general contractor is not an "other party" is the concept of "statutory employer". Under Section 65.1–30 of the Virginia Code (1968 Repl.Vol.) a general contractor is liable to pay to any workman, whether his or a subcontractor's, any workmen's compensation for injuries occurring when work is being performed which is a part of the general contractor's trade, business or occupation.[3]

1. § 65.1–40. *Employee's rights under Act exclude all others.*—The rights and remedies herein granted to an employee when he and his employer have accepted the provisions of this Act respectively to pay and accept compensation on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise, on account of such injury, loss of service or death.

2. § 65.1–41. *Subrogation of employer to employee's rights against third parties; evidence; recovery; compromise.*—The making of a lawful claim against an employer for compensation under this Act for the injury or death of his employee shall operate as an assignment to the employer of any right to recover damages which the injured employee or his personal representative or other person may

have against any *other party* for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such *other party.* * * * (Emphasis added.)

3. § 65.1–30. *Liability of contractor to workmen of subcontractor.*—When any person (in this and the four succeeding sections (§§ 65.1–31 to 65.1–34) referred to as "contractor") contracts to perform or execute any work for another person which work or undertaking is not a part of the trade, business or occupation of such other person and contracts with any other person (in this section and §§ 65.1–31, 65.1–32, 65.1–33 and 65.1–34 referred to as "subcontractor") for the execution or performance by or under the subcontractor of the whole or any part of

Turnage v. Northern Virginia Steel Corp., 336 F.2d 837 (4th Cir.1964); Anderson v. Thorington Construction Co., 201 Va. 266, 110 S.E.2d 396 (1959); Sykes v. Stone & Webster Engineering Corp., supra.

 The effect of Section 65.1–30 is to render the general contractor a statutory employer of all employees engaged in the work. If the general contractor is deemed a statutory employer, he is treated as an employer within the meaning of Section 65.1–40, supra, and Section 65.1–103 of the Virginia Code (1968 Repl.Vol.), and is therefore immune from a common law action brought by the injured workman.[4] Turnage v. Northern Virginia Steel Corp., supra at 841. The decisive factor in making the statutory employer determination is whether the work being performed by the injured workman was part of the trade, business or occupation of the general contractor. If the work being performed was not a part of the general contractor's trade, business or occupation, then the general contractor is not a statutory employer and is not liable for workmen's compensation. Furthermore, if the general contractor is not a statutory employer, the injured workman's right to maintain an action at common law is preserved by Section 65.1–5 of the Virginia Code (1968 Repl. Vol.).[5] Anderson v. Thorington Construction Co., supra, 201 Va. at 271, 110 S.E.2d at 399–400; Sykes v. Stone & Webster Engineering Corp., supra, 186 Va. at 122–123, 41 S.E.2d at 472. This section provides that the Act shall not be construed to make the employees of an independent contractor the employees of the person or corporation employing or contracting with such independent contractor. It would seem therefore, that for purposes of the Act, if a general contractor contracts with another contractor to perform work which is part of the general contractor's trade, business or occupation, that other contractor is a subcontractor within the meaning of the Act, and under Section 65.1–30, supra, the general contractor is a statutory employer of the other contractor's workmen. On the other hand, if the general contractor contracts with another contractor to perform work which is not a part of the general contractor's trade, business or occupation, that other contractor is an independent contractor within the meaning of the Act, and under Section 65.1–5, supra, workmen employed by the other contractor are not precluded from maintaining a common law action against the general contractor. In the case at bar the question with which this court is faced is whether the function performed by Carolina Tire in servicing and repairing tires on Paramount's equipment was a part of Paramount's trade, business or occupation.

The evidence in the case at bar reveals that Paramount was a general contractor under a contract with the State of Virginia. In order to perform this contract, Paramount had subcontracted with other contractors to do base material, fence and concrete work. There is no doubt that Paramount was the statutory employer of the workmen of these

the work undertaken by such contractor, then the contractor shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if that workman had been immediately employed by him.

4. § 65.1–103. *Duty to insure payment of compensation; effect of insurance.*— Every employer subject to the compensation provisions of this Act shall insure the payment of compensation to his employees in the manner hereinafter provided. While such insurance remains in

force he or those conducting his business shall only be liable to an employee for personal injury or death by accident to the extent and in the manner herein specified.

5. § 65.1–5. *Employees of independent contractors.*—Nothing in this Act contained shall be construed to make, for the purposes of this Act, the employees of an independent contractor the employees of the person or corporation employing or contracting with such independent contractor.

subcontractors since this work was part of the overall project. However, the contract with Carolina Tire was not a contract for construction work. Instead, this contract was for work which this court would classify as maintenance work.

In support of its motion to dismiss, the defendant contends that the performance of the tire maintenance work is an essential part of the road construction business. The facts reveal that Paramount had approximately three million dollars worth of equipment on the project and that the average monthly payment to Carolina Tire was approximately $20,000 for tires and service. In some instances, one of Paramount's master mechanics would instruct the plaintiff to attend to the tires on certain machinery; at other times, the plaintiff would change tires which he deemed in need of repair. Mr. Slusher remained on the job site whenever equipment was in operation, and in order to locate him while he was on the job site, Paramount installed one of its radios in the truck which Slusher used in performing his duties. This truck was owned by Carolina Tire, but it was maintained by Paramount while on the job site. The contract between Carolina Tire and Paramount contained a provision which stated that Slusher's primary job was servicing and maintaining tires but that further services could be performed at Paramount's discretion. In the depositions, Mr. Slusher stated that occasionally his hoist truck was used to lift motors for Paramount's mechanics. Mr. Slusher's wages and commissions were paid by Carolina Tire. According to John H. Stephenson, Paramount's project manager, the maintenance and servicing of tires on Paramount's equipment is an integral and expensive part of Interstate road construction. (Dep. p. 62) Mr. Stephenson further indicated that it was a customary practice of road construction companies to contract for this type tire service and that it was more efficient to utilize this type arrangement than to buy the tires and hire a man

who is an expert in tire maintenance. (Dep. pp. 62–63, 65).

In Sears, Roebuck & Co. v. Wallace, 172 F.2d 802 (4th Cir.1949) the Court of Appeals for this circuit cited with approval a Connecticut case, King v. Palmer, 129 Conn. 636, 30 A.2d 549 (1943), in which the Connecticut court stated:

If the work is of such a character that it *ordinarily or appropriately would be performed by the principal employer's own employees* in the prosecution of its business, *or as an essential part in the maintenance thereof, it is a part or process of his work.*

In light of the substantial investment which Paramount has in its equipment and the necessity of keeping this equipment operating, it would appear that proper tire maintenance on this equipment was important. However, in light of Mr. Stephenson's statement that it is customary to contract with a tire company to provide tire maintenance service and his acknowledgment of the expertise required, it would appear to this court that this work was not of such a character that it "ordinarily or appropriately" would be performed by Paramount's own employees. It is true that the line between work which is or is not a part of an employer's trade, business or occupation is a narrow one; however, that line must be drawn somewhere in order to determine who is an "other party" within the meaning of the Workmen's Compensation Act. Burroughs v. Walmont Inc., 210 Va. 98, 100, 168 S.E.2d 107, 108 (1969).

It is the opinion of this court that in the case at bar the tire maintenance work which was performed by the plaintiff as an employee of Carolina Tire was not a part of the trade, business or occupation of Paramount, and therefore, Paramount was an "other party" against which the plaintiff can rightfully maintain a common law action. In its research, this court was able to find only one case with facts similar to those in the case at bar. In Hudyka v. Interstate Tire & Brake Stores, Inc., Mass., 271 N.E.2d 617 (1971), the Supreme Ju-

dicial Court of Massachusetts came to the same conclusion as this court has reached. In *Hudyka*, the plaintiff was an employee of a subcontractor hired to perform grading and other work for a housing project. The defendant was a tire maintenance company which had a contract with the grading subcontractor to supply and repair tires. The plaintiff was injured while helping employees of the tire company change a tire on equipment owned by the grading subcontractor. After recovering workmen's compensation as an employee of the grading subcontractor, the plaintiff brought a common law action against the tire company and recovered damges. In holding that the plaintiff was not precluded from maintaining the action, the Massachusetts court held that the repair work being performed was merely ancillary and incidental to the grading subcontractor's business and not a part thereof. *Hudyka*, supra, at 619.

For the reasons stated above the defendant's motion to dismiss is overruled, and the plaintiff is entitled to proceed with his case.